UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF NEW HAMPSHIRE

<u>Theresa Wamala</u>

    v.                                    Civil No. 09-cv-304-JD

<u>City of Nashua, et al.</u>


<u>O R D E R</u>

    Theresa Wamala, proceeding pro se, brings a civil rights
action against the City of Nashua, the Nashua Police Department,
the Mayor of Nashua, the present and former Chiefs of Police, and
Nashua police officers and supervisors.[1]  The defendants move to
compel Wamala to provide mandatory initial discovery under
Federal Rule of Civil Procedure 26(a)(1)(A) and to produce
documents that have been requested pursuant to Federal Rule of
Civil Procedure 34.  Wamala objects to the motion.


<u>Background</u>

    Severine Wamala, Theresa Wamala's father, was accused of
sexually assaulting his daughters, J.W., Lwiza, and Theresa, and
was convicted of multiple counts of felonious sexual assault of
J.W.  The circumstances that led to the charges against Severine

---

[1]Defendants Jonathan Lehto and Thomas Bergeron were
previously dismissed.

Wamala began with a family dispute on September 11, 2006.  The police were called to the Wamalas' apartment during the evening, but they left after determining that everyone was safe.  The police were called again later, however, when J.W. threatened her father with a knife.  When the police arrived, J.W. accused her father of raping her.

The Nashua police questioned Severine Wamala, J.W., Theresa, and Lwiza, about J.W.'s charges against their father.  In response to interrogation, Theresa and Lwiza told the police that they also had had sexual relations with their father.  Theresa and Lwiza later recanted their statements during interviews with an investigator for the New Hampshire Public Defender and testified at their father's trial that he had never had sex with them.  Their statements to the police were used to impeach their trial testimony.

Theresa alleges that the police and other defendants violated her constitutional rights by keeping her imprisoned in the family's apartment and then at the police station for hours, by telling her what to say, by coercing her to make false statements, by emotionally torturing her, by conducting an unreasonable search of her, and by making statements constituting libel, slander, and defamation against her.  She seeks declaratory judgments that the defendants violated her rights as

she alleges.  She also seeks millions of dollars in compensatory
and punitive damages.

## Standard of Review

Unless otherwise exempt, parties are required to provide to
the opposing party the information specified in Rule 26(a)(1)(A).
The scope of discovery, unless limited by court order, extends to
"any nonprivileged matter that is relevant to any party's claim
or defense --including the existence, description, nature,
custody, condition, and location of any documents . . . .
Relevant information need not be admissible at the trial if the
discovery appears reasonably calculated to lead to the discovery
of admissible evidence."  Fed. R. Civ. P. 26(b)(1).

"[T]he purpose of pretrial discovery is to 'make trial less
a game of blindman's bluff and more a fair contest with the basic
issues and facts disclosed to the fullest practicable extent.'"
Macaulay v. Anas, 321 F.3d 34, 53 (1st Cir. 2003) (quoting United
States v. Proter & Gamble Co., 356 U.S. 677, 682 (1958)).
Therefore, a party who fails to comply with discovery
requirements, including mandatory disclosures under Rule
26(a)(1), may be barred from using undisclosed evidence and
testimony from undisclosed witnesses to support or oppose a
motion and at trial unless the failure to disclose was

3

substantially justified or harmless.  Fed. R. Civ. P. 37(c)(1);
see also CQ Int'l Co. v. Rochem Int'l, Inc., 2010 WL 2292162, at
*14 (D. Mass. June 7, 2010).

   The party moving to compel discovery bears the initial
burden of showing that the information he seeks is relevant and
not privileged.  See Caouette v. OfficeMax, Inc., 352 F. Supp.
2d. 134, 136 (D.N.H. 2005); Saalfrank v. Town of Alton, 2009 WL
3578459, at *3 (D.N.H. Oct. 27, 2009).  He also must show the
effort made to obtain discovery without court action, provide the
request and response that is the subject of the motion, disclose
other relevant circumstances, and provide grounds to support the
motion to compel.  Saalfrank v. Town of Alton, 2010 WL 839884, at
*13 (D.N.H. March 5, 2010).  The party from whom discovery is
sought bears the burden of compliance.  Carmona v. Toledo, 215
F.3d 124, 135 (1st Cir. 2000).


## Discussion

   Under the discovery plan in this case, initial disclosures
were due by December 18, 2009.  Wamala failed to comply with her
obligations under Rule 26(a)(1)(A) within the time allowed.  In
response to inquiries from the defendants' counsel and the
defendants' interrogatories and requests for production of
documents, Wamala eventually produced a written statement in

which she provided additional information and asserted that she
had complied with discovery requirements.  The defendants contend
that Wamala's disclosures were insufficient and seek an order
compelling Wamala to disclose the requested documents and
information.

A.  <u>Initial Disclosures</u>

Rule 26(a)(1)(A) requires parties to disclose certain
information without waiting for a request from the opposing
party.  The applicable part of Rule 26 requires:

> (ii) a copy--or a description by category and location-
> -of all documents, electronically stored information,
> and tangible things that the disclosing party has in
> its possession, custody, or control and may use to
> support its claims or defenses, unless the use would be
> solely for impeachment.

Fed. R. Civ. P. 26(a)(1)(A)(ii).  Therefore, Rule 26(a)(1)(A)(ii)
requires Wamala to provide either a copy or a description by
category and location of the documents or information.

The defendants move to compel Wamala to properly identify
any documents on which she intends to rely to support her claims
that her reputation has suffered, that her grades have suffered,
that she was forced to miss a doctor's appointment, and that she
is entitled to money damages.  Counsel for the defendants
corresponded with Wamala about deficiencies in her initial
discovery disclosures, and Wamala sent a letter to counsel, dated

May 21, 2010, that addressed her obligations under Rule 26(a)(1)(A).  Wamala stated:  "All the documents the plaintiff will use to prove her claims are accessible by the defendants as there are only three sources namely:  1) Nashua Police Department (defendants have full access) 2) Courts with State v. Wamala case (Public information) 3) Internet-Google 'Wamala' (Public information).

In her objection to the motion to compel, Wamala contends that the documents supporting her claims are the officers' reports of the incident involving her family on September 11 and 12, 2006, which she says are available from the Nashua police department, information from State v. Wamala, and an allegedly false statement that "can be found on numerous websites."  Wamala identified the police reports prepared by the Nashua Police Department covering the incidents involving her family on September 11 and 12, 2006, which is sufficient disclosure of those documents.  It appears that Wamala has provided copies of some materials from the criminal case against her father, Severine Wamala, and she contends that she has provided all the documents that she has.  Wamala again suggests that the defendants "google wamala" to find the unidentified false statements.

Wamala must comply with the requirements of Rule 26(a)(1)(A)

6

and must also supplement her disclosures as required by Rule 26(e).  If she intends to use any documents or information from the state criminal case against her father, <u>State v. Wamala</u>, to support her claims here, she must provide copies or descriptions as required by the rule.

Wamala also must provide either documents containing the allegedly stigmatizing false statements or a specific description of the location of the statements.  Referring the defendants to Google is not an appropriate means of fulfilling her obligation to provide information that she will use to support her claims involving her statement about her father.

As is noted above, failure to comply with mandatory discovery can result in sanctions that will prevent Wamala from using undisclosed evidence to support her claims.  <u>See</u> Fed. R. Civ. P. 37(c).

B.  <u>Interrogatories and Requests for Documents</u>

The defendants propounded interrogatories and requests for documents to Wamala on March 10, 2010.  They contend that her responses to requests for correspondence with her father and others and to requests on the topics of her physical and mental health, her educational records, and the alleged damage to her reputation are insufficient.  The defendants ask that Wamala be

compelled to provide appropriate responses.  Wamala objected to
the cited requests and also objects to the motion to compel.

     1.   <u>Physical and Mental Health Information</u>

     In interrogatories 4, 5, 6, and 16, the defendants asked for
information about Wamala's physical and mental health providers,
about any conditions for which she sought treatment and the
treatment she received, about treatment specifically resulting
from her experiences on September 11 and 12, 2006, and the
identity of the provider with whom Wamala had an appointment on
September 12.  The defendants offered the alternative of signed
authorizations to identified providers.  Wamala provided the name
and address of the provider with whom she had a scheduled
appointment on September 12, Dr. Sara Clay, but otherwise
asserted that her medical records were irrelevant and privileged.
The defendants also asked Wamala to produce her physical and
mental health records from 2001 to the present, and records and
bills for any treatment that Wamala claims was necessary because
of injuries from the September 11 and 12 incidents.

     Wamala initially objected to discovery of her medical
information on the grounds that the information was irrelevant
and privileged.  In her objection to the motion to compel, she
stipulates that she "did not seek mental health treatment or

medical treatment after the illegal conduct of the defendants.
Such records do not exist."  Wamala also contends that her
medical records are not discoverable for the reasons discussed in
Saalfrank, 2009 WL 3578459, at *3.

The court construes Wamala's statement to stipulate that she
did not seek or receive any medical treatment for physical or
mental health reasons related to the incidents on September 11
and 12, 2006, and that no records exist that would show medical
treatment related to the emotional harm she alleges resulted from
the incidents on September 11 and 12, 2006.  The defendants have
not responded to Wamala's stipulation.

### a.   Relevance

"'Relevant evidence' means evidence having any tendency to
make the existence of any fact that is of consequence to the
determination of the action more probable or less probable than
it would be without the evidence."  Fed. R. Evid. 401.  For
purposes of discovery, parties are entitled to nonprivileged
matters that are relevant to a party's claim or defense.  Fed. R.
Civ. P. 26(b)(1).

Wamala alleges that the defendants "emotionally tortured"
her, that she has been in agony since her encounter with the
defendants on September 11 and 12, 2006, and that nothing has

alleviated her pain.  She further alleges that she is now afraid
of the police, that she cries when she sees a sign for a police
station, and that repetition of the "libelous statements" causes
her anger and outrage.  Wamala states that she is under "constant
emotional distress."

Despite her emotional condition, Wamala stipulates that she
has not sought nor received any medical treatment for mental or
physical problems associated with the incidents on September 11
ans 12.  Because Wamala has stipulated that she did not request
or receive any mental health treatment related to the September
11 and 12 incidents, her mental health records are irrelevant.

The defendants also argue that they are entitled to all of
Wamala's medical records from 1999 to the present to determine
whether her medical history supports her statement to the police,
that her father sexually assaulted and raped her.  More
specifically, they contend that they are entitled to review the
records of Dr. Sara Clay from January of 2006 to January of 2008
to determine whether Wamala missed an appointment on September
12, 2006, as she alleges, and also to determine whether Dr.
Clay's records show that Wamala's statement to the police about
assault and rape was truthful, rather than false as she alleges.

Although Wamala's medical records might include information
relevant to her claim that her statement about assault and rape

was false, the defendants' request targets all medical care
providers and covers more than ten years.  The limited relevance
of the records suggests that the defendants' request should be
narrowed.  The defendants also specifically seek Dr. Clay's
medical records for Wamala, which may include information about
whether she had been sexually assaulted or raped by her father.
Records compiled before the incidents on September 11 and 12,
2006, are arguably relevant to defend against Wamala's claim that
the defendants coerced her to make false statements that her
father sexually assaulted and raped her.  The defendants do not
explain the relevance of Dr. Clay's records for Wamala after the
September incidents.  Therefore, Dr. Clay's records for the
period between January and September of 2006 are relevant to the
defense against Wamala's claims.

     b.   <u>Privilege</u>

     For purposes of a federal claim in federal court, federal
law provides the rules pertaining to privilege.  Fed. R. Evid.
501.  In contrast, state law provides the governing standard for
privilege as to evidence pertaining to a state law cause of
action.  <u>Id.</u>  In this case, Wamala brings both federal and state
law claims.

     Both federal law and New Hampshire law recognize a privilege

protecting confidential communications between mental health care providers and their patients.  <u>See</u> <u>Jaffee v. Redmond</u>, 518 U.S. 1, 18 (1996); N.H. Rev. Stat. Ann. § 330-A:32; <u>see also</u> <u>Saalfrank</u> 2009 WL 3578459, at *5 n.7.  While New Hampshire also recognizes a privilege protecting confidential communications between physicians and their patients, federal law does not recognize a similar privilege.  <u>See</u> N.H. Rev. Stat. Ann. § 329:26; <u>see also,</u> <u>e.g.</u>, <u>United States v. Wilk</u>, 572 F.3d 1229, 1236 (11th Cir. 2009); <u>United States v. Bek</u>, 493 F.3d 790, 802 (7th Cir. 2007). Under both New Hampshire law and federal law, a party may waive the protection of the mental health provider privilege by putting her emotional or mental condition at issue.  <u>See</u> <u>Desclos v. S.</u> <u>N.H. Med. Ctr.</u>, 153 N.H. 607, 612-14 (2006); <u>In re Sims</u>, 534 F.3d 117, 131 (2d Cir. 2008); <u>Schoffstall v. Henderson</u>, 223 F.3d 818, 823 (8th Cir. 2000).  The New Hampshire physician-patient privilege also may be waived in certain circumstances.  <u>See</u> <u>Nelson v. Lewis</u>, 130 N.H. 106, 109-10 (1987).

The defendants do not address the privilege issue other than to assert that because Wamala "has put the matter of the assault into issue by the bringing of this suit," they should be permitted to review her medical records.[2]  The defendants bear

---

[2]Defendants' counsel also represented defendants in the <u>Saalfrank v. Town of Alton</u> case and should be familiar with the analysis of privilege that was done there which is analogous to

the burden of showing that the physician-patient privilege does not protect the medical records they seek.  <u>See</u> <u>Saalfrank</u>, 2009 WL 3578459, at *3.  Because they have not met their burden, their motion is denied as to Wamala's medical records.

    2.  <u>Wamala's Correspondence with Her Father, Severine Wamala</u>

    In their request for production of documents, the defendants asked for "copies of all correspondence between [Wamala] and [her] father."  Wamala responded that the correspondence was not within the scope of discovery, that the correspondence was privileged, and that the correspondence was not relevant to any claims or defenses.  In support of their motion, the defendants state that they are seeking the correspondence to defend against Wamala's claim that she was forced to make false statements about her father's relations with her.  Wamala responds that her correspondence with her father does not pertain to her claims because he has no knowledge about her interactions with the police or about "the false statement to the media."  She also asserts that her father is not pressuring her to maintain her suit and that the law recognizes "an inherent daughter-father relationship," citing <u>Elk Grove Unified Sch. Dist. v. Newdow</u>, 542 U.S. 1, 24 (2004).

_____

this case.

In <u>Elk Grove</u>, the Supreme Court considered whether a student's father had standing to challenge the constitutionality of requiring recitation of the Pledge of Allegiance in a public school.  <u>Id.</u> at 18.  The part of the decision Wamala cites is a concurrence, in which Chief Justice Rehnquist expressed the view that the father-daughter relationship provided standing.  <u>Id.</u> at 24.  The cited concurrence does not pertain to a <u>privilege</u> to protect communications based on a father-daughter relationship.

Courts generally have not recognized a privilege to protect communications between parents and minor children.  <u>See, e.g.</u>, <u>In re Grand Jury</u>, 103 F.3d 1140, 1144 (3d Cir. 1997); <u>Throop v. Jacquez</u>, 2009 WL 5386125, at *9 (C.D. Cal. Oct. 27, 2009) (citing cases); <u>LaBrecque v. Sch. Admin. Dist. No. 57</u>, 463 F. Supp. 2d 88, 95 (D. Me. 2006) (citing cases).  To the extent such a privilege might be recognized, it would not apply here.  Theresa Wamala is an adult and was an adult at all times pertinent to the claims in her suit.  The court has not found a parental privilege that would apply to correspondence between Severine and Theresa Wamala.

Wamala argues that her correspondence with her father would not be relevant because he has no personal knowledge of her interactions with the police.  The defendants explain that they are requesting the correspondence to address her claim that she

14

was forced to make untrue statements about her father.  The
defendants want to examine the correspondence to determine
whether Severine pressured Theresa to recant her statements to
the police about him and for evidence of the nature of their
relationship.  In other words, the defendants are looking for
evidence that Theresa's statements to the police were true.
Theresa's correspondence with her father is relevant to her claim
and the defense against it.

        The defendants did not specify a period for which they
sought correspondence, making the request extend without limit to
all correspondence between Theresa and her father.  Without a
time limit, the request is overbroad for the purpose of
determining whether Severine pressured Theresa to recant her
statements to the police and the nature of their relationship.  A
more narrow request, bounded by time limits, would meet the
relevance requirement.  Therefore, Theresa must provide copies or
allow the defendants to make copies of her correspondence with
her father during the period between September 11, 2006, and the
present.

        3.  <u>All Correspondence Pertaining to the Claims and
Allegations in the Complaint</u>

        The defendants asked Wamala to produce all correspondence

15

pertaining to the claims in her complaint and the events that
form the basis of her claims.  Wamala answered the defendants'
request, stating that she had already provided the requested
correspondence and referred the defendants to the complaint and
to "charyl's investigative reports attached."  The defendants
contend that Wamala has not produced any correspondence on the
topics requested.

In response to the motion to compel, Wamala states that the
request "is absurd," that she has produced all of the documents,
and that she has communicated with hundreds and hundreds of
people about the case.  She further contends that none of the
people have personal knowledge about what happened.  The
defendants have not explained the relevance of the requested
correspondence.

It is the defendants' burden to demonstrate that the
requested discovery is relevant.  See Caouette, 352 F. Supp. 2d
at 136.  They did not carry that burden in their motion to
compel.

### 4.  School Records

The defendants asked Wamala to produce copies of all of her
school records and files, including attendance records.  Wamala
initially responded that her school records were not

16

discoverable, were privileged, and were irrelevant.  In the motion to compel, the defendants explain that they requested the school records to respond to Wamala's claims that the police prevented her from attending classes and that her education suffered because of the defendants' conduct.

Wamala objects to the motion on the grounds that she is not making a claim that the police kept her from attending classes and that she has already produced the educational records that relate to her claims.[3]  She continues, however, to say that her claim is that when she asked to leave the police station to attend class, the detective refused to allow her to leave.  She also contends that her claim that the trauma she experienced caused her to repeat classes has been proven by evidence of the tuition she paid.  She further contends that her struggle to maintain her grade point average was "a natural consequence" of the defendants' actions.

As such, Wamala makes claims based on her attendance and performance in school, and her school records are relevant to her claims.  She provides no basis for failing to provide the defendants with copies of or access to her school records.  The defendants' request, however, is not bounded by dates and, as

---

[3]Wamala does not assert in her objection to the motion to compel that her education and school records are protected by a privilege.

such, is overbroad for its purpose.  Wamala shall provide the
requested discovery or sign authorizations to allow the
defendants access to her school records for the period between
September of 2005 and June of 2008.


    5. <u>Written Statements</u>

    The defendants asked Wamala to produce copies of any written
statement made or obtained by Wamala or anyone on her behalf
regarding the allegations in her complaint.  Wamala responded
that she had already produced the statements and referred the
defendants to her complaint and the documents filed with it, to
"charyl's investigative reports," and to "the attached court
transcripts."  The defendants contend that Wamala's response is
insufficient because only Wamala's affidavit was filed with the
complaint.  In her objection to the motion to compel, Wamala
stated only:  "All provided, I consider this issue resolved."

    If Wamala has produced all of the written statements made by
her or obtained by her or on her behalf regarding the allegations
in her complaint, then she has fulfilled her discovery
obligation.  If, however, there are additional statements or if
new statements have been made, she must provide the defendants
with copies.  Wamala is reminded, again, that she probably will
not be permitted to use any written statements regarding the

allegations in her complaint in this case that were not disclosed to the defendants.

### Conclusion

For the foregoing reasons, the defendants' motion to compel (document no. 43) is granted in part and denied in part.  The plaintiff shall provide the following information to the defendants **on or before October 15, 2010,**:

1.  Initial disclosures:

    copies of documents or information from <u>State v. Wamala</u> that Wamala intends to use in this case, and

    copies or specific location of the allegedly false statements that are the subject of Wamala's complaint.

2.  Copies of all correspondence between Theresa and Severine Wamala from September 11, 2006, to the present.

3.  Copies of or signed authorizations to access all of Wamala's education records from September of 2005 to June of 2008.

4.  Copies of any written statements made by or obtained by Wamala or obtained on her behalf regarding the allegations in the

complaint that have not been disclosed to the defendants.

The following discovery requests made by the defendants are denied without prejudice to filing a properly supported motion to compel:

1. Interrogatories 4 and 5.

2. Requests for Production of Documents 2, 4, and 5.

The defendants are given the opportunity to file a properly supported motion to compel **on or before October 29, 2010.**

SO ORDERED.

/s/ Joseph A. DiClerico, Jr.
Joseph A. DiClerico, Jr.
United States District Judge

September 20, 2010

cc: Brian J.S. Cullen, Esq.
    Theresa Wamala, pro se

20