UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF NEW HAMPSHIRE


Theresa Wamala


        v.                          Civil No. 09-cv-304-JD
                                    Opinion No. 2010 DNH 194

City of Nashua, et al.


O R D E R


        Theresa Wamala, proceeding pro se, brings civil rights
claims against the City of Nashua, the mayor, the present and
former chiefs of police, and several police officers, arising
from events following a family disturbance in the Wamalas' home
in September of 2006.  Wamala moves for partial summary judgment
as to the liability of the defendants.  The defendants object to
summary judgment in Wamala's favor.


Standard of Review

        Summary judgment is appropriate when the moving party
demonstrates "the pleadings, the discovery and disclosure
materials on file, and any affidavits show that there is no
genuine issue as to any material fact and that the movant is
entitled to judgment as a matter of law."  Fed. R. Civ. P.
56(c)(2).  A party opposing a properly supported motion for
summary judgment must present competent evidence of record that

shows a genuine issue for trial.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986).  All reasonable inferences and all credibility issues are resolved in favor of the nonmoving party.  See id. at 255.  When the party with the burden of proof moves for summary judgment, to succeed, she must provide conclusive undisputed evidence to support her claims.  Zimmerman v. Puccio, 613 F.3d 60, 70 (1st Cir. 2010).

<u>Background</u>

In September of 2006, Theresa Wamala lived with her father, Severine Wamala, her sisters, Lwiza and Jessica, and her brother, Jacob, in Nashua.  Theresa was attending the University of Massachusetts at Lowell.  She is the oldest of her siblings and was twenty-three years old at the time.  The Wamalas are from Uganda.

During the evening of September 11, 2006, a dispute arose among family members while dinner was being prepared.  Theresa was not home at the time.  In her affidavit, Lwiza states that when she tried to drain a pot of hot water into the sink, Jessica refused to move away from the sink where she was washing dishes.  Their father, Severine, pushed Jessica out of Lwiza's way.  Jacob was upset that their father pushed Jessica and called the police.

Two police officers responded to the call, and after determining that everyone was safe, they left at about 9:30 p.m.

Severine was upset with Jacob for calling the police and told him that he should leave. Jessica said that she would leave with Jacob. Theresa arrived home at about 10 p.m. Severine then told Jessica and Jacob to go to bed. Lwiza heard Jessica and Jacob laughing and talking as they got ready for bed and went to their bedroom.

At about 11:30 p.m., Jessica and Jacob burst out of the bedroom, trying to get out of the apartment. Severine tried to stop them. Jacob escaped, but Jessica did not. Jessica threatened to jump off of the balcony, but Severine directed Lwiza and Theresa to guard the sliding door to the balcony. Jessica then tried to jump out of the window in her bedroom, but her father stopped her. Jessica threatened her father with a knife, and after struggling with her, Severine took the knife. Severine told Theresa to call the police, which she did.

Officer Lisa Nadworny and Officer Scott Ciszek, from the Nashua Police Department, responded to the call. The officers first arranged to have Jessica stay with Pamela Wamala, Severine's wife who was separated from him.[1] Jessica told

---

[1]Pamela was Jessica's stepmother who was separated from their father.

Nadworny that her father, Severine, had been raping her over a period of time.  Jacob told Ciszek that Jessica had told him the same thing and gave Ciszek a paper Jessica had written for a school project, called a "time capsule," which also revealed that Severine had raped Jessica.

Because of the rape charges, the police took Jessica and Jacob to the police station and a short time later also took Lwiza.  Ciszek remained in the apartment with Theresa and Severine.  At about 1:00 a.m., Ciszek was notified that Jessica had confirmed that her father had sexually assaulted her and that Severine's bedroom was one of the locations of the assaults.  Other officers took Severine to the police station, leaving Theresa in the apartment with Ciszek, who was directed to make sure that Severine's bedroom remain untouched.

Ciszek remembers talking with Theresa about school and other things but states that he never told her that she could not leave the apartment.  Theresa states that she asked Ciszek to leave so that she could sleep and that he responded that he would not leave until he received orders from the police department.  Theresa states that she was afraid to go to sleep with Ciszek in the apartment because she did not know what he would do while she was asleep.  She stayed awake the whole night.

4

At about 7:30 a.m., Theresa left the apartment to go to classes at the University of Massachusetts in Lowell.  Around 9:30 a.m., Detective Michael Moushegain called Theresa on her cell phone and asked her to come to the Nashua Police Department. Although Theresa states that she was ordered to come to the Nashua Police Department, she admits that is disputed.  She arrived at around 10:00 a.m., and Moushegain took her upstairs to an interview room.

Theresa alleges that her interview with Moushegain proceeded as follows, although she also admits that her allegations of coercion, intimidation, and being ordered to stay are disputed. Theresa states that at first Moushegain was calm and quiet in his questioning.  He asked Theresa "about different things," and she denied that her father had engaged in any sexual behavior or anything inappropriate with her.  After about fifteen minutes, however, Theresa represents that Moushegain "started yelling and screaming right in my face."  Theresa states that Moushegain yelled that she had to talk and that she could not leave until she told him that "it happened."  Theresa states that she repeated that nothing had happened and asked to leave to go to school and to a doctor's appointment.  In response, Moushegain said "no way" and yelled, screamed, and banged the table for an hour.  Moushegain then told Theresa that Lwiza had been kept at

5

the station for more than ten hours because she refused to say
that their father had had sex with her and that Theresa would not
be allowed to leave until she stated that her father had had sex
with her.  Theresa states that out of fear and intimidation, she
was forced to say that she had had sexual contact with her father
so that she would be allowed to leave.

Theresa then gave a video-taped statement, which began at
11:52 a.m. and ended at 12:49 p.m.  The statement included
detailed descriptions of Theresa's sexual contact with her father
and with her uncles before leaving Uganda.  Theresa maintains
that her recorded statement was false and that the contents of
the statement was dictated by Moushegain.  After making the
statement, Theresa says that she asked to leave but Moushegain
would not allow her to leave and, instead, told her that the
police were going to collect a DNA sample from her.  Theresa
states that Moushegain told her that if she wanted to leave, she
would have to provide the DNA sample.  Theresa signed a consent
form and gave a DNA sample.  Theresa states that she was kept at
the station without food and finally left at 9:00 p.m.  The
police log shows that Theresa was signed out at 6:25 p.m.

Moushegain disputes Theresa's version of events on September
12, 2006.  He states that he was trained at the New Hampshire
Police Academy and the Nashua Police Department about

6

interrogation and interviews with crime victims.  Moushegain states that he conducted Theresa's interview according to the training he has received.  He also states that he did not yell or scream at Theresa, that he did not pound on the table, and that he did not try in any way to intimate her.  He further states that he did not threaten Theresa, that he did not coerce her into giving the taped statement that implicated her father, and that he did not dictate to her what to say in the statement. Moushegain states that he did not coerce Theresa into providing a DNA sample.

Theresa states that Moushegain provided her recorded statement to his supervisor, Captain Scott Howe, who provided the statement to the Hillsborough County prosecutor's office, which led to criminal charges against Severine Wamala.  She also states that the officers provided her statement to the public and the media and that the statement is "widely circulated."  Moushegain states that he gave a copy of the recorded statement to his supervisor who shared it with prosecutors and others in the investigation of Severine Wamala.  Moushegain did not give the statement to the media and does not know of anyone who did so.

Severine Wamala was charged with sexually assaulting his daughters, Jessica, Lwiza, and Theresa.  At trial, Theresa testified that her statement that her father sexually assaulted

7

her was not true, and the prosecution used the video-tape of the statement to impeach her testimony.[2]  Severine was convicted on multiple counts of felonious sexual assault of Jessica.  Severine is currently in prison serving his sentence for sexual assault.

Theresa and Lwiza brought suit in federal court, alleging civil rights violations arising from their interactions with the police on September 12, 2006.  Lwiza has voluntarily dismissed her action.  Theresa brings twelve claims against Nashua; its mayor, Bernard Streeter; the present and former chiefs of the Nashua Police Department, Donald Conley and Timothy Hefferan; police supervisors, Scott Howe, Richard Sprankle, Frank Bourgeois, Kurt Gautier, Michael Ledoux, and Raymond McDannell; Detective Michael Moushegain; and Officer Scott Ciszek.[3]

## Discussion

Theresa Wamala brings claims pursuant to 42 U.S.C. § 1983, alleging violations of her First, Fourth, Fifth, and Fourteenth Amendment rights.  In her motion for summary judgment, Theresa states that she asks the court "to rule on five distinctive

---

[2]Lwiza also gave a video-taped statement about sexual assault by her father, and she also recanted her statement at his trial.

[3]Theresa included the Nashua Police Department as a defendant, which is deemed to be the same as the City of Nashua.

issues:  A) Custody, B) Involuntary, C) Unreasonable, D) False
Statement and E) Liability that plaintiff is entitled to judgment
as a matter of law."  She also addresses her actual claims for
purposes of determining liability.  To the extent they are
material, the five issues Theresa raises are considered in the
context of determining whether she is entitled to summary
judgment on liability for her claims.[4]

A.   Counts I and II - Unreasonable Seizure

     Theresa contends in her first claim that Moushegain violated
her Fourth Amendment right to be free from unreasonable seizures
by detaining her at the Nashua Police Department on September 12,
2006.  She contends in her second claim that Ciszek violated her
Fourth Amendment rights by detaining her as a prisoner in the
family's apartment during the early morning of September 12,
2006.

     "The Fourth Amendment protects against unreasonable searches
and seizures."  Schubert v. City of Springfield, 589 F.3d 496,
501 (1st Cir. 2006) (citing U.S. Const. Amend. IV).  "A person is
seized when the police restrain that person's liberty," which can
be accomplished by physical force or by "a verbal 'show of

---

     [4]The defendants only addressed the five general issues.

authority' that would compel a reasonable person to comply."
United States v. Dubose, 579 F.3d 117, 121 (1st Cir. 2009).
"When police conduct rises to the level of an arrest it is a
seizure that requires probable cause under the Warrant Clause of
the Fourth Amendment."  Schubert, 589 F.3d at 501.  "The line
between temporary detentions and de facto arrests is often
blurred . . . [depending on] whether a police officer's initial
action was justified and, if so, whether subsequent (more
coercive) actions undertaken by the officer were justified by
developing circumstances."  Morelli v. Webster, 552 F.3d 12, 19
(1st Cir. 2009).

    1.  Moushegain

    As Theresa admits, the facts are disputed about the
circumstances of her interview with Moushegain and about the
voluntariness of her statement.  While Theresa alleges that she
was not allowed to leave, that Moushegain yelled and screamed at
her, and that he coerced her into giving a statement and DNA
samples, Moushegain denies her allegations in his affidavit.
Therefore, Theresa has not shown that the undisputed facts
support her claim that Moushegain's actions amounted to an
unreasonable seizure in violation of the Fourth Amendment.

2.  <u>Ciszek</u>

Theresa primarily faults Ciszek for refusing to leave the apartment after her family members were taken to the police station for questioning.  She also asserts that Ciszek kept her as a prisoner in the apartment.  The factual circumstances, however, do not support Theresa's claim of being held as a prisoner.

To the extent Theresa intended to base a Fourth Amendment claim on Ciszek's presence in the apartment, she has not developed that theory sufficiently to permit review.  Further, the facts of record show that Ciszek remained in the apartment to prevent any tampering with Severine's bedroom because Jessica had reported that some of the sexual assaults had occurred there.  As such, he presents a reasonable basis to remain in the apartment.

Theresa lacks evidence that Ciszek kept her a prisoner in the apartment.  Theresa does not claim that she tried to leave and that Ciszek prevented her from doing so.  Instead she suggests that Ciszek's presence intimidated her from trying to leave.  The next morning, however, Theresa left the apartment without any interference from Ciszek.  Therefore, she lacks conclusive undisputed evidence to support her claim that Ciszek violated the Fourth Amendment.

11

3.  <u>The City and Supervisors</u>

In her complaint, Theresa alleges that the City of Nashua, the police department, the present and former chiefs of police, the mayor of Nashua, and Scott Howe, a captain in the Nashua Police Department, are liable for Moushegain and Ciszek's actions that violated the Fourth Amendment.  Theresa names other supervisors in her memorandum in support of summary judgment, but because those officers are not parties in this case, no claims are brought against them.[5]  Because Theresa has not provided sufficient evidence to support summary judgment in her favor that her Fourth Amendment rights were violated, she also lacks evidence to support summary judgment in her favor on her claims against the municipal and supervisory defendants.

In addition, liability for constitutional violations, actionable under 42 U.S.C. § 1983, cannot be based on a theory of vicarious liability.  <u>Ashcroft v. Iqbal</u>, 129 S. Ct. 1937, 1948 (2009); <u>Monell v. Dep't of Social Servs. of New York</u>, 436 U.S. 658, 691 (1978).  Municipalities are liable "only for underlying, identifiable constitutional violations attributable to official

---

[5]Wamala referred to "All Supervisors of Moushegain" and "All Supervisors of Ciszek" in her complaint and explained that the names would be identified through discovery.  She did not move to amend her complaint to add defendants, however, and the time for amending the complaint has passed.

municipal policy; the municipality's failure to train or
supervise its police officers only becomes a basis for liability
when 'action pursuant to official municipal policy of some nature
caused a constitutional tort.'"  Kennedy v. Town of Billerica,
617 F.3d 520, 532 (1st Cir. 2010) (quoting Monell, 436 U.S. at
691).  Similarly, supervisors are liable only for their own
unconstitutional actions, which occur when the supervisor
participates in a rights-violating incident or when the
supervisor acts with deliberate indifference to the possibility
that a subordinate's lack of supervision or training will cause a
violation of a constitutional right.  Sanchez v. Pereira-
Castillo, 590 F.3d 31, 49 (1st Cir. 2009).

Theresa contends that because the defendants admitted that
supervisors in the police department occasionally monitor the
actions of detectives and officers, the supervisor defendants are
liable for failing to prevent Fourth Amendment violations by
Moushegain and Ciszek.  She argues that Nashua and the police
department are liable for "illegal conduct by their employee
Moushegain [that] happened in their own building at their own
watch."  Theresa's allegations do not meet the requirements for
municipal or supervisor liability.  Therefore, because she has
not established either a constitutional violation or municipal or
supervisory liability, she has not shown she is entitled to

13

summary judgment on that part of her claims of supervisory and
municipal liability in Counts I and II.

B.  Counts III and IV - First Amendment

     Theresa alleges that Moushegain violated her First Amendment
rights by dictating to her what to say in the video-taped
statement and by forcing her to make a false statement, which
interfered with her right to testify truthfully.  Theresa relies
on the general principle, articulated in Ashcroft v. Free Speech
Coalition, 535 U.S. 234, 245 (2002), that "the First Amendment
bars the government from dictating what we see or read or speak
or hear."  She cites Melton v. City of Oklahoma City, 879 F.2d
706, 714 (10th Cir. 1989), and Smith v. Hightower, 693 F.2d 359,
368 (5th Cir. 1982), to support her First Amendment right to
testify truthfully.

     With respect to Count III, although Theresa alleges that
Moushegain dictated her statement, he denies doing so.  Theresa
has not provided evidence beyond her own affidavit to support her
charge.  Therefore, Theresa has not provided conclusive evidence
that Moushegain violated her First Amendment rights by his
involvement in her video-taped statement.

     In Count IV, Theresa cites her First Amendment right to
testify truthfully.  See Cossette v. Poulin, 2006 WL 3751206, at

14

*3 (D.N.H. Dec. 18, 2006) (citing cases); see also Melton, 879 F.2d at 714-15 (holding that police officer plaintiff had First Amendment right to testify on behalf of criminal defendant despite police department's interest in protecting confidential communications and efficiency of public services); Smith, 693 F.2d at 368 (holding that First Amendment protects right of police officers to testify in criminal proceedings).  Theresa argues that Moushegain violated her First Amendment right by forcing her to make a false statement, which was video taped. Again, Moushegain denies coercing Theresa into making a statement and denies that the statement is false.

Theresa testified at her father's trial.  At that time, she said that she did not have sexual contact with her father, which she contends is truthful.  Her trial testimony contradicted her recorded statement, which was played to show her prior inconsistent statement.  Because Theresa testified to the version of events that she contends is correct at her father's trial, she has not proven her claim for purposes of summary judgment that Moushegain violated her First Amendment right to testify truthfully.

In the absence of proof of underlying First Amendment violations, Theresa has not proven her municipal and supervisory claims.

C.   Count V - Fifth Amendment

Theresa alleges that Moushegain violated the Fifth Amendment
by forcing her to make the video-taped statement that her father
had sexually assaulted her.  The Fifth Amendment protects an
individual from being compelled to give evidence against herself
or, stated in other terms, provides a privilege against forced
self-incrimination.  See, e.g., Maryland v. Shatzer, 130 S. Ct.
1213, 1228 (2010); Dickerson v. United States, 530 U.S. 428, 433-
34 (2000); Kastigar v. United States, 406 U.S. 441, 444-45
(1972); United States v. Allee, 888 F. 2d 208, 214 (1st Cir.
1989).  The Fifth Amendment privilege protects a witness from
disclosures that the witness reasonably believes could be used
against her in a criminal proceeding.  See Hiibel v. Sixth
Judicial Dist. Court of Nevada, Humboldt County, 542 U.S. 177,
190-91 (2004); Chavez v. Martinez, 538 U.S. 760, 766-67 (1994).

First, Moushegain denies coercing Theresa into making any
statement.  In addition, Theresa's video-taped statement
incriminated her father in sexual assaults but did not
incriminate Theresa, who was the victim of her father's crimes.
Although the video-taped statement was used to impeach Theresa's
contrary testimony at her father's criminal trial, it was not
used to implicate her in any criminal activity or to prove
charges against her.  Therefore, Theresa has not shown that she

16

is entitled to summary judgment on her Fifth Amendment claim against Moushegain or against the municipal and supervisory defendants.

D.   <u>Counts VI, VII, X, XI, and XII - Eighth and Fourteenth Amendment</u>

Theresa contends that Moushegain violated the Eighth Amendment prohibition against cruel and unusual punishment and the Due Process Clause of the Fourteenth Amendment by failing to give her food and by screaming and yelling at her during the interview.  Because Theresa was not a convicted inmate, however, the Eighth Amendment did not apply to her.  <u>See</u> <u>Ruiz-Rosa v. Rullan</u>, 485 F.3d 150, 155 (1st Cir. 2007).  Therefore, her claims are considered under the Fourteenth Amendment.

Theresa alleges that Moushegain violated her Fourteenth Amendment due process rights by denying her food, by screaming and yelling at her during the interrogation, and by preventing her from attending classes, from going to work, and from attending a doctor's appointment on September 12, 2006.  She also contends that the city, the police department, and the police chiefs are liable for Moushegain's due process violations. Moushegain denies Theresa's allegations that he forced her to

stay at the police department and that he screamed and yelled during the interview.

Because Theresa's allegations challenge the fairness of Moushegain's actions, without contending that she was denied adequate procedures, the claims are based on a denial of substantive due process.[6]  See Gonzalez-Fuentes v. Molina, 607 F.3d 864, 880 (1st Cir. 2010).  Police actions violate due process if they shock the conscience and also "violated a right otherwise protected by the substantive Due Process Clause." Martinez v. Cui, 608 F.3d 54, 63-65 (1st Cir. 2010).  Whether police actions shock the conscience may depend in part on the context of the right violated.  Id.  For purposes of a claim of coercive interrogation or unreasonable detention, only the most egregious conduct will violate due process, such as police actions that are intended to cause injury and are not justified by any legitimate government interest.  Chavez, 538 U.S. at 774-75; accord Kennedy, 617 F.3d at 539-40.

Theresa's allegations about Moushegain's conduct are contested.  Moushegain denies that he engaged in coercive

_____

[6]Theresa's allegations that she was improperly detained are contested.  In addition, her allegations do not implicate the Fourteenth Amendment's prohibition against punishment prior to adjudication of guilt on charges as would be applicable if she were being held as a pretrial detainee.  See, e.g., Mosher v. Nelson, 589 F.3d 488, 494, n. 3 (1st Cir. 2009).

18

interrogation or detention of Theresa.  In the absence of
undisputed facts showing coercive interrogation or detention that
would meet the egregious conduct actionable as a violation of
substantive due process, Theresa is not entitled to summary
judgment on that claim.  Because she has not established a
constitutional violation, she is not entitled to summary judgment
on her claim against the city and Moushegain's supervisors.


E.  Count VIII - Libel, Slander, and Defamation

     Theresa contends that Moushegain and Howe violated her First
Amendment rights by intentionally distributing her statement
about sexual abuse, which she contends is false statement.  She
characterizes their actions as libel, slander, and defamation.
She also contends that the city, the mayor, and the police
supervisors are liable for approving the distribution of the
statement or for failing to stop distribution.  The defendants
assert that Theresa's statement about sexual abuse was true, not
false as she now alleges.

     Theresa's theory of a First Amendment violation is mistaken.
The First Amendment protects the public's right to free
expression and limits the scope of state law claims of libel,
slander, and defamation when the "statement involved either a
public official or a matter of public concern, or both."

19

<u>Galarneau v. Merrill Lynch, Pierce, Fenner & Smith Inc.</u>, 504 F.3d 189, 199 (1st Cir. 2007).  Theresa has not cited a case that supports a First Amendment right to be protected from dissemination of false statements.

Theresa treats her claim as a federal claim under the First Amendment.  To the extent Theresa intended to raise a state law claim for libel, slander, or defamation, which is not suggested by her complaint, she would have to show "that the defendant failed to exercise reasonable care in publishing a false and defamatory statement of fact about the plaintiff to a third party, assuming no valid privilege applies to the communication." <u>Thomas v. Tel. Publ'g Co.</u>, 155 N.H. 314, 321 (2007).  Because the defendants dispute Theresa's assertion that her video-taped statement is false, Theresa has not established the elements of the state law claim for purposes of summary judgment.

F.  <u>Claim IX - DNA Sample</u>

Theresa contends that Moushegain violated the Fourth Amendment by forcing her to give a DNA sample.  She argues that the involuntary collection of DNA from her constituted an unreasonable search without her consent.  Moushegain, however, states in his affidavit that he did not coerce Theresa to give a DNA sample.

20

The Fourth Amendment protects against unreasonable searches. <u>United States v. Weikert</u>, 504 F.3d 1, 6 (1st Cir. 2007).  "[A] compelled intrusion into the body" for DNA testing constitutes a search for Fourth Amendment purposes.  <u>See</u> <u>id.</u> (internal quotation marks omitted).  Voluntary consent to a search, however, makes the search reasonable.  <u>See</u> <u>Schneckloth v. Bustamonte</u>, 412 U.S. 218, 222 (1973); <u>United States v. Gonzalez</u>, 609 F.3d 13, 18 n.1 (1st Cir. 2010); <u>United States v. Vanvliet</u>, 542 F.3d 259, 264 (1st Cir. 2008).

Because it is disputed whether Theresa voluntarily consented to provide a DNA sample, she cannot succeed on her claim for purposes of summary judgment.

G.   <u>Summary</u>

Theresa has not provided conclusive undisputed evidence that would entitle her to judgment as a matter of law on any of her claims.  Therefore, she is not entitled to summary judgment.

<u>Conclusion</u>

For the foregoing reasons, the plaintiff's motion for summary judgment (document no. 45) is denied.


SO ORDERED.


_____
Joseph A. DiClerico, Jr.
United States District Judge

November 10, 2010

cc:  Brian J.S. Cullen, Esquire
     Theresa Wamala, pro se

22